[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to this Court by summons and complaint dated June 27, 1997 and returnable August 5, 1997, wherein the Plaintiff claimed a dissolution of marriage, an allocation of debts and a fair and equitable property settlement.
A motion to enjoin accompanied the complaint. CT Page 4872
On July 28, 1997 the Defendant appeared pro se.
On July 30, 1997 the Defendant filed an answer to the complaint and a cross complaint, claiming a dissolution of marriage, an equitable distribution of the parties' property, real and personal, temporary and permanent alimony, counsel fees and restoration of her former name of Johnston.
On August 29, 1997 the Defendant appeared by counsel and counsel filed an answer and a cross complaint on behalf of the Defendant making substantially the same claims for relief as in the Defendant's pro se answer.
On September 12, 1997, the parties, through their respective counsel, agreed that the complaint should be transferred from the Judicial District of Windham to the Judicial District of New London.
On November 17, 1997, a stipulation between the parties was approved by the Court, Solomon, J.
On January 14, 1998, new counsel appeared for the Defendant.
On June 23, 1998, the matter was claimed for the trial list.
The parties, with their respective counsel and witnesses, appeared before the Court on March 30, 1999 and were heard.
The Court makes the following findings of fact.
The Plaintiff and the Defendant were joined in marriage on September 22, 1990 at Niantic in East Lyme.
The parties have resided in this State for more than 12 months preceding the date of the complaint.
There were no children issue of this marriage.
Neither party is the recipient of State aid or assistance.
The marriage has broken down irretrievably with no prospect of reconciliation.
The parties have been separated since April 1997. CT Page 4873
The real estate in question, as concerns the interests of the Plaintiff and the Defendant, as best the Court can determine based on the testimony and the so-called certificate of title, see Plaintiff's Exhibit 1, was acquired by Pim-John, Inc., a corporation formed by the parties, from Bernard and Irene Caron in 1989. See Sterling Land Records, Vol. 58 at page 238. Although a copy of the deed was not entered in evidence, as best the Court can devine, the deed covered what is now lots 1-7 on a map entitled Laiho Estates, plus "other land" comprising 31.93 acres.
The purchase price was $225,000.00 and the down payment was between $40,000.00 and $50,000.00, the down payment being secured by virtue of a loan from one Kumpich, the maker of the note being the Plaintiff.
The Defendant, according to the testimony, did not contribute any funds toward the purchase price.
The Plaintiff originally intended the land as a hunting preserve for himself.
The testimony reflects that the corporation Pim-John, Inc., has been dissolved but no exhibit from the Secretary of State's office, corporations section, confirms this act.
The Plaintiff is a dock builder and does marine work allied thereto.
The Plaintiff constructed a modular home on lot 2 of Laiho Estates, known as 49 Laiho Road, Sterling, which was formerly the home of both of the parties.
The Plaintiff continues to reside in this residence even though there is a foreclosure action pending.
A separate parcel was acquired by the parties by deed from Savage and Wheeler to Barbara B. Johnston and Paul B. Pimentel in 1990. See Sterling Land Records, Vol. 61, page 21, comprising 3.39 acres situated off Valley View Road, this according to the data reflected on Plaintiffs Exhibit 1.
The Defendant has recently purchased a property at Black Point in East Lyme for her home and residence.
The Plaintiff's education extended only through the eighth CT Page 4874 grade and he has a limited ability to read and write. He also has some hearing impairment. The Defendant's education extended through high school.
This is the second marriage for both parties.
The Plaintiff's work involves operating heavy equipment, marina building and marine salvage.
At one time the Plaintiff's sons by a prior marriage worked with him.
The Plaintiff will be age 62 in May, he doesn't feel that he can continue much longer in his present type of employment due to health problems.
The Plaintiff's work is seasonal and he draws unemployment compensation in the winter.
Attached to the Defendant's financial affidavit is a copy of a promissory note dated July 12, 1988 in the amount of $35,202.67 from the Plaintiff as maker to Barbara B. Johnston, now Barbara Pimentel, as payee.
In testimony regarding said note, the Plaintiff disclaims the same and represents he never signed the note and that he was unaware of the same until two months ago.
While the Plaintiff acknowledged that the signature appeared to be similar to his, he claims the Defendant often had him sign blank sheets of paper regarding bids on marine projects where the Defendant typed up the bids on marine project cost estimates for him.
The Court observes that the original note was not offered in evidence nor was the copy attached to the Defendant's financial affidavit offered as a separate exhibit.
The Defendant claimed that she had the original note but saw fit not to offer the same.
It appears that on occasion the Defendant would sell off personalty and equipment of the Plaintiff, to wit his firearms, his camper and an excavating machine, without his permission or consent. CT Page 4875
The Plaintiff's claim is that the marriage foundered on the rocks of mistrust where he could no longer believe or trust the Defendant.
The business entity formerly operated by the Plaintiff was known as J.C. Marine Dock Construction.
The Plaintiff represents that his marine-oriented business has fallen off dramatically due to the Defendant creating disruptive problems with prospective customers.
Presently, the Plaintiff owns a barge and a pushboat which needs repair in order to be operational.
The Plaintiff testified that all he knew was how to work with his hands or machinery and that he had no business sense and left the paperwork to the Defendant.
The Plaintiff acknowledged that he presently resided with one Linda Martel and that she was employed in the construction industry.
The Plaintiff is presently living on whatever savings he has including $1,800.00 recently received from an income tax refund.
Plaintiff recently sold his tug boat to Connecticut River Dock Dredge for $2,500.00.
In 1988 prior to the marriage, the Plaintiff had purchased premises known as 161 River Road for $275,000.00 with borrowed funds, but the same was lost in foreclosure.
The Plaintiff experienced problems with a daughter of the Defendant by a prior marriage named Suzanne when the child refused to move with the parties to Sterling.
The Plaintiff acknowledged biting the young lady, for which he was arrested, and received a three year suspended sentence in 1993.
As a result of the incident, the child was placed in a foster home. The child was age 12 at the time.
At one point in the marriage, the parties gambled modestly at CT Page 4876 a casino in New Jersey.
The Plaintiff is presently unemployed, his living expenses are being paid in part by his friend, Linda Martel.
The Plaintiff is, according to the testimony, not presently on probation.
No certified record of any convictions was offered to the Court as an exhibit.
Lot 2 Laiho Estates on which is situated the modular home created and built by the Plaintiff and occupied by him is being foreclosed by one Millett.
Lot 6 Laiho Estates it is represented has as its only improvement a small shed thereon.
According to the testimony, there is a judgment lien against lot 6 of $56,951.83.
The Plaintiff represents that the parcel shown on the hand-drawn sketch part of Plaintiff's Exhibit 1 and designated 31.93 acres is free and clear.
Plaintiff valued this parcel at $40,000.00.
The Plaintiff also valued certain lots shown on the above-noted sketch as follows:
Lot 1 valued at $15,000.00
Lot 3 valued at $98,000.00
Lot 4 valued at $15,000.00
Lot 7 valued at $15,000.00
At one time the Plaintiff held a Coast Guard vessel operator's license which was accomplished through an oral examination because the Plaintiff felt he was illiterate.
The license has expired.
For a short time the Plaintiff was in the U.S. Navy. CT Page 4877
The Plaintiff and the Defendant first met in 1987 and kept company for several years.
The Defendant holds a real estate brokers license.
The Defendant presently is employed by the Mohegan Sun Casino at the rate of $8.83 per hour in security work.
The Defendant currently has health insurance incident to her employment.
The Defendant claims that she loaned the Plaintiff the $35,202.67 reflected in the copy of the note dated July 12, 1988 to enable him to buy property.
The Defendant testified that she did not type up the note but that the same was prepared by Attorney Daniel Milstein of West Hartford.
The Court notes that Attorney Milstein did not appear as a witness in addition to the original of the note not being offered at least for the examination and perusal of the Court.
The property purchased with the $35,000.00+ was lost in foreclosure.
According to the testimony when the corporation known as Pim-John was formed, the Defendant owned 100% of the shares and was president which condition continued during the life of the corporation.
The Plaintiff was corporate secretary.
The Defendant, according to the testimony, owes the State of Connecticut $30,000.00 more or less regarding her daughter Suzanne's costs, charges and expenses as a ward of the State.
The Defendant's purchase of the Black Point property was at a price of $129,900.00 with a down payment of $20,000.00 secured by a loan from a cousin and a mortgage for the balance. The Defendant acknowledged that she handled all the finances during the marriage, that the Plaintiff never had a checkbook, that the Defendant had run the checkbook for the Plaintiff's former business of J.C. Marine. CT Page 4878
The Defendant acknowledged selling off the Plaintiff's firearm collection.
As concerns the $35,000.00 note, the Defendant claimed that she had the same in a safe but until recently had forgotten about it.
The witness Barbara MacFadyen testified that she is a title searcher and has been since 1985 and has a degree from the University of New Haven and has done title work for various lawyers.
MacFadyen searched the land records in Sterling regarding real property of the parties.
MacFadyen prepared Plaintiff's Exhibit 1 but the same is not signed and the data contained therein is confusing insofar as it purports to reflect the status of the Sterling land records as related to the parties, however, it is the only exhibit from which the Court can make any reasonable determination as to ownership of the parcels.
After the conveyance by Caron to Pim-John, Inc. in 1989, the corporation Pim-John Inc. conveyed Lot #6 on Laiho Estates to Paul B. Pimentel and Barbara B. Johnston by Quit Claim deed, Sterling Land Records, Vol. 61 at page 906 on June 29, 1990.
No information as to the selling price was disclosed, no copy of the deed was offered, no title of the map was provided nor whether it was an approved subdivision.
Plaintiff's Exhibit 1 then indicates that Barbara B. Johnston filed a Change of Name certificate changing her name to Barbara B. Pimentel, Sterling Land Records, Vol. 64, page 154.
Plaintiff's Exhibit 1 then recites that Lot 6 and the 3.39 acre parcel are encumbered by tax and fire district liens and an attachment and a judgment lien in favor of Paul M. Kumpich, Jr. in the amount of $55,000.00 and that the premises are in foreclosure.
The exhibit then continues on to indicate that the corporation Pim-John, Inc. conveyed Lot 1 Laiho Estates to Johnson Enterprises Inc., Trustee in 1990. CT Page 4879
Lot 3 to Johnson Enterprises Inc., Trustee in 1990.
Lot 7 to Johnson Enterprises Inc., in 1990.
These three lots were then conveyed to Suzanne M. Johnston, a minor in 1992.
See Plaintiff's Exhibit 2 a judgment, Barbara Johnston Pimentel vs. Suzanne M. Johnston, settling title in these three lots, 1, 3 and 7, in Barbara Johnston Pimentel, CV 97 55629.
Pim-John, Inc. conveyed Lot 2 to Barbara B. Pimentel by Quit Claim deed in 1992.
Pim-John, Inc. conveyed Lot 4 to Barbara Johnston Pimentel Trustee by Quit Claim deed in 1990.
Pim-John, Inc. then conveyed Lot 5 to Paul J. Pimentel and Cheryl S. Pimentel by Quit Claim deed in 1990 and subsequently Paul Pimentel conveyed his interest in this lot to Cheryl Pimentel in 1995.
Lot 5 is allegedly encumbered by a mortgage in the amount of $104,800.00.
It would appear, therefore, that the only interest in real estate which the Plaintiff has would be his interest in the 3.39 acre parcel acquired from Savage and Wheeler, a one-half interest. It would appear from the title searcher's Plaintiff's 1 that because it is alleged that Pim-John, Inc. has been dissolved as a corporation and because the Defendant testified that she owned 100% of the shares of the corporation that the Plaintiff, as best the Court can devine, has no record interest in the 31.39 acre parcel. The Plaintiff according to Plaintiff's Exhibit 1 has a one-half interest in Lot 6.
No map by a registered land surveyor was offered to the Court as an exhibit.
No assessment figures were provided to the Court.
No appraiser testified as to the values of the respective parcels except as hereinafter noted. No deeds of record were offered as exhibits. CT Page 4880
No title certificates signed by an Attorney at Law in a recognized format were presented as exhibits.
See Plaintiff's Exhibit 3 which purports to be statements from the tax collector of the Town of Sterling covering all the aforementioned parcels of real estate in greater or lesser amounts totaling $41,944.93.
The only exhibit claimed to be an appraisal is Plaintiff's Exhibit 4 concerning premises described as 49 Laiho Road, defined on the hand-drawn sketch attached to Plaintiff's Exhibit 1 as lot #2. This exhibit values lot #2 and improvements at $116,000.00.
Attached to the exhibit is a copy of a motion for judgment of strict foreclosure dated March 19, 1999 indicating that George and Madeline Millett are foreclosing the mortgage that they hold on this lot.
From the financial affidavits of the parties the Court makes the following findings of fact.
The Plaintiff is unemployed and shows no current income.
Plaintiff's weekly expenses as shown are to the amount of $577.50.
Plaintiff's affidavit reflects debt totaling $140,300.34.
Of this total, $47,000.00 relates to the Kumpich debt, $25,480.63 claimed due the Town of Sterling and substantial accounting fees of over $32,000.00±.
Plaintiff's financial affidavit does not value any of the real estate, indicates ownership of a 1996 Dodge Ram vehicle with a lien thereon of $23,719.00 and zero equity.
The only assets reflected on Plaintiff's affidavit are a barge and push boat valued at $5,000.00.
The Defendant's financial affidavit discloses her employment at Mohegan Sun Casino with a weekly gross of $353.20 and a weekly net of $312.22.
Weekly expenses are shown as $668.34. CT Page 4881
The Defendant's affidavit reflects debt of $91,132.04 including substantial unpaid counsel fees, an obligation to the State of $39,000.00± and substantial real estate taxes.
The Defendant values real estate as follows:
 SCHEDULE B
(from Defendant's financial affidavit)
ADDRESS VALUE MORTGAGE EQUITY
Laiho Estates (other land)67 Laiho Road, Sterling, CT 18,100.00 0 Lot 2-49 Laiho Road, Sterling, CT 130,000.00 62,000.00 47,000.00 Lot 4-55 Laiho Road, Sterling, CT 12,040.00 0 Lot 6-69 Laiho Road, Sterling, CT 13,440.00 0 3.39 acres-E-1 Valley View Road 13,610.00 0 35 Seacrest Avenue, Niantic, CT 130,000.00 110,000.00 0 ____________________________________________________________________________ TOTALS 317,190.00 172,000.00 47,000.00
The Defendant shows ownership of a 1996 Dodge motor vehicle with zero equity, furnishings, etc., valued at $6,000.00 and $220.00 in a checking account.
The Defendant also shows the claimed July 12, 1988 promissory note with accrued interest at $73,925.61 but values it at zero on her affidavit.
Defendant's Exhibit 1 is a copy of the Plaintiff's 1998 Federal Income tax return showing adjusted gross income of $15,995.00.
Defendant's Exhibit 2 confirms the figures shown on Defendant's 1.
Defendant's Exhibits 5 and 6 relate to the purchase of a timeshare in 1988 in a condominium known as La Renaissance in Atlantic City, New Jersey, which the testimony reflects was lost by default.
Defendant's Exhibit 5 indicates it may be worth $1,000.00, however.
 The Law
CT Page 4882
The Court has considered all of the statutes which apply in matters of this nature including C.G.S. § 46b-80 et seq.
The Court has considered all of the applicable case law that govern the matter.
The Court has considered the testimony of the parties, their candor or lack thereof and all exhibits and the arguments of counsel.
The Court has considered the length of the marriage, the cause of the dissolution, the age, health, station, occupation, employability, estate and needs of the parties.
The Court has considered the standards of living of the parties.
 Discussion
This is a marriage of approximately 8-1/2 years, the second for both parties.
The Plaintiff is age 62; the Defendant, age 60.
The Plaintiff has a limited ability to read and write and is unfamiliar with matters such as bookkeeping and keeping a checkbook.
This is borne out by the evidence and exhibits which have all been under the control and direction of the Defendant, her control of Pim-Jon, Inc. as president and sole stockholder, plus title to some parcels of the real estate stand in the name presently of Johnston Enterprises, Inc. Trustee.
The Court notes that there was no testimony as concerns the corporation Johnston Enterprises, Inc., its current status, officers or directors and shareholders or its present standing with the Secretary of State's Corporation Division.
The lack of a title certificate in acceptable form coupled with no data on assessments and encumbrances of record, whether there are easements for utility lines, rights of way, wetlands and planning and zoning approval have all made the Court's work more difficult. CT Page 4883
There is no question but that both of the parties are deeply in debt.
As concerns the Defendant's claim of $73,925.61 being due on the July 12, 1988 note, principal and accrued interest, the Plaintiff's lack of education, ability to read and write, the non-production of the original note and the non-appearance by the attorney who allegedly drew the note all give the Court considerable concern as to its validity.
Mindful of the staggering debt of both parties and the encumbered status of the real estate, one might reasonably conject that proving the genuineness of the note would have been a high priority.
The Court, however, cannot act as counsel. The Plaintiff claims it is a fraudulent document. The Court is also at a disadvantage as concerns any exhibit or testimony establishing that Pim-John, Inc. has been in fact dissolved, where its assets, if any, were transferred and to whom.
The same observation applies as to the status of Johnston Enterprises, Inc.
No evidence was offered as to any 401K or SSIP or any pension plan and the Court proceeds on the premise that there are none.
The Court is also at a loss to understand how title to some of the real estate can still be in the name of Pim-John, Inc. when it has been represented that the corporation has been dissolved.
In addition, neither the testimony nor the exhibits clearly define the encumbrances of record on the various parcels; be they mortgages, attachments, lis pendens or other liens, nor were copies of any mortgages or other liens of record made exhibits in this proceeding nor were the mortgagors clearly identified.
Even the above-noted Schedule B indicating the Defendant's position as to equity position is inaccurate and misleading.
No copy of the map of Laiho Estates was made available to the Court as an exhibit, only the aforementioned hand-drawn rough sketch, the map would have been of great help to the Court. CT Page 4884
In review, it would appear based on the exhibits and testimony that the title to the real estate is as follows:
Lot 1 ino Johnston Enterprises, Inc. Trustee valued by the Plaintiff at $15,000.00
Lot 2 ino Barbara B. Pimentel mortgage to Millett in the amount of $80,000.00, in foreclosure.
Lot 3 ino Johnston Enterprises Inc. valued by the Plaintiff at $98,000.00.
Lot 4 ino Barbara Johnston Pimentel Trustee, valued by the Plaintiff at $15,000.00.
Lot 5 ino Cheryl Pimentel, wife of Paul J. Pimentel, son of the Plaintiff, Paul B. Pimentel.
Lot 6 ino Paul B. Pimentel and Barbara B. Johnston.
Lot 7 ino Johnston Enterprises, Inc.
The 3.39 acre parcel ino Barbara B. Johnston and Paul B. Pimentel.
The 31.93 acre parcel ino Pim-John Inc. This is the land remaining after setting out the above-noted seven lots as conveyed by Caron in 1989.
The Court enters the following orders.
The Defendant's request for restoration of her former name of Johnston is granted.
The Defendant may retain her 1996 Dodge motor vehicle, all of her present furnishings and personal effects and the monies in her checking account.
The Defendant may retain the home and residence which she purchased at 35 Seacrest Avenue, Niantic for $130,000.00, which appears to be in her name alone.
The Defendant shall be solely responsible for the mortgage on said premises at 35 Seacrest Avenue, Niantic. CT Page 4885
The Defendant may retain Lot 1, Lot 3, Lot 4 and Lot 7.
The Defendant shall convey and set over to the Plaintiff, Lot 2, known as 49 Laiho Road and the Plaintiff shall be responsible for the mortgage to Millett and save the Defendant harmless therefrom.
The Plaintiff shall convey all of his right, title and interest in Lot 6 to the Defendant, who shall be responsible for any encumbrances or liens thereon and save the Plaintiff harmless therefrom.
The 3.39 acre parcel owned jointly by the parties shall be exposed for sale at a price to be mutually agreed upon and the resulting equity after sale and payment of expenses and taxes shall be equally apportioned and divided between the parties.
The 31.93 acre parcel ino Pim-John, Inc. shall be exposed and listed for sale at a price mutually agreed upon and the resulting equity after payment of all liens and encumbrances and charges equally apportioned and divided between the parties.
The Plaintiff may retain his Dodge Ram truck, his barge and push boat and his tools and personal effects.
On the basis of the testimony of the parties expressly disclaiming any request for alimony, the Court enters no order incident thereto.
The Defendant has her own medical and dental coverage.
As to the promissory note claimed by the Defendant, the Court, on the basis of the testimony and exhibits or lack thereof, is unable to find that it is an enforceable instrument and enters no order incident thereto.
Each party shall be responsible for their own attorney's fees.
Each party shall be responsible for the debts shown on their financial affidavits mindful that some of the debt appears to be joint and several.
The Court grants the request to dissolve the marital union CT Page 4886 and the parties are declared to be single and unmarried.
Austin, JTR